UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEAH SPROSTY, <br><br> Plaintiff, <br><br> v. <br><br> DOUGLAS A. COLLINS,[*] as Secretary of the United States Department of Veterans Affairs, <br><br> Defendant. | No. 22 CV 3651 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Leah Sprosty was terminated from her position in the U.S. Department of Veterans Affairs and now brings claims against her employer for retaliation under the Rehabilitation Act and Family and Medical Leave Act, and for denial of her rights under the FMLA. Defendant moves for summary judgment. For the reasons discussed below, the motion for summary judgment is granted.

**I.      Legal Standard**

A motion for summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I

---

[*] *See* Fed. R. Civ. P. 25(d).

view the facts and draw reasonable inferences in favor of the non-moving party to determine whether summary judgment is appropriate. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023).

## II.  Background

Leah Sprosty was a disabled woman who worked at the United States Department of Veterans Affairs' Captain James A. Lovell Health Care Center as an advanced medical support assistant. [65] ¶ 1.[1] Sprosty's disabilities included bilateral hearing loss, bilateral tinnitus, major depressive order, and generalized anxiety. [65] ¶ 5. The VA had been aware of Sprosty's disabilities since at least 2017, when she first sought a reasonable accommodation. [65] ¶ 6. She requested a change in her work schedule to be able to attend afternoon medical appointments. [65] ¶ 7. Her request was denied because there was no work for her during her requested time, but she was offered an alternate accommodation that allowed liberal use of leave to attend medical appointments. [65] ¶ 8. Sprosty accepted the alternate accommodation in October 2017. [65] ¶ 9.

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings. When citing depositions, I also use the deposition transcript's original page numbers. The facts are largely taken from the parties' responses to their adversary's Local Rule 56.1 statement of facts, [65] and [69], where both the asserted fact and the opposing party's response are set forth in one document. Asserted facts need to be supported by reference to specific pages in the evidentiary record. N.D. Ill. Local R. 56.1(d)(1)–(2). Any asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). I disregard legal arguments in the statement of facts. *See Cady v. Sheahan*, 467 F.3d 1057, 1060–61 (7th Cir. 2006); *see also* [69] ¶ 12. The parties dispute many facts, but the facts in those disputes are not all material. To the extent disputed facts are relevant and the parties rely on admissible evidence, I include both sides' versions.

In 2021, Sprosty changed clinic assignments to find a better fit for her disabilities. [65] ¶¶ 26–30. Lovette Parks, who was Sprosty's supervisor starting in January 2021, testified that Sprosty missed work maybe three out of five days every week. [65] ¶ 24; [52-2] at 51 (47:17–20). Sprosty testified that when she took off to go to doctors' appointments, she would generally use the leave she had accrued, like annual or sick leave. [52-2] at 14 (48:21–49:1). She also said she used Family and Medical Leave Act leave. [52-2] at 14 (49:2–3).

The VA's general leave policy required employees to invoke the specific type of leave they wished to use at the time it was requested. [65] ¶ 34. For example, an employee intending to use sick leave was required to call and inform their supervisor that they would be absent and request sick leave to cover the hours missed. [65] ¶ 34. The process was the same for using annual leave, invoking FMLA, and requesting emergency paid leave. [34] ¶ 34. Sprosty was told by a supervisor that supervisors could only approve one leave without pay request per pay period without high-level approval. [65] ¶ 35.[2] When an employee did not have leave available, the VA usually marked an employee absent without leave. [65] ¶ 35. Even if an employee had FMLA leave available, an employee would still be marked AWOL if they did not specifically state that they wanted to use a specific type of leave, such as leave without pay, annual leave, or sick leave in conjunction with FMLA leave. [69] ¶ 20. The AWOL designation was used as a placeholder. The VA could follow up and substitute the

---

[2] As Sprosty notes, however, there is no discretion to deny leave without pay when someone requests available FMLA leave. [65-6] at 3. And in Sprosty's own case, supervisors approved multiple leave without pay requests in one week. [65-7] at 12–14.

3

designation with the leave as later approved. [69-3] ¶ 8. If the leave request was denied, the AWOL designation would stand. [69-3] ¶ 8.

Sprosty was approved for 480 hours of intermittent FMLA leave beginning November 26, 2020, and ending November 25, 2021. [65] ¶ 36.[3] She was approved for leave with a frequency of one to four times a month for a duration of one to seven days per episode. [52-3] at 8–9. The approval also set forth a policy that if FMLA was used for an unexpected flare-up and advance notice was not given, Sprosty was required to notify her supervisor that she was using FMLA when calling in. [65] ¶ 37.

Starting in March 2021, the VA began tracking Sprosty's FMLA leave usage. [65] ¶ 38.[4] On March 25, Sprosty was absent from work. [65] ¶ 39. Her absence was

---

[3] Sprosty disputes this fact in part, but her response includes argument based on what she alleges are the inferences from the fact.

[4] Defendant submits a spreadsheet that defendant purports was created by Sprosty's supervisor, Sharon Eden-Fulop to track Sprosty's FMLA usage starting in March 2021. [52-3] at 11–13. Sprosty challenges this record as hearsay within hearsay. Evidence supporting a motion for summary judgment must be admissible in the same manner as at trial. *Murphy v. Caterpillar Inc.*, 140 F.4th 900, 907 (7th Cir. 2025). Defendant does not respond to Sprosty's challenge. The spreadsheet is hearsay without an exception. To be admissible as a business record, the record must be (a) made at or near the time of the event or condition by someone with knowledge, (b) kept in the course of a regularly conducted business activity, and (c) a regular practice of that activity. Fed. R. Evid. 803(6)(A)–(C). These conditions can be shown by the testimony of a custodian or other qualified witness, or by a certification that complies with Federal Rules of Evidence 902(11) or (12). Fed. R. Evid. 803(6)(D). Finally, the record is only admissible if the opponent does not show that the source of information or the method or the circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6)(E). Generally, "at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial." *Murphy*, 140 F.4th at 908. This is required unless "limited exceptions apply," like where the opposing party has relied on or conceded the accuracy of the records. *Id.* Here, the entries on the spreadsheet were not made at or near the time of Sprosty's absences, or were corrected later, as shown by corrections made nearly a month after Sprosty had requested leave. [52-3] at 11 (see records for pay periods 8 and 9). Eden-Fulop, in the notes column, wrote that while voicemail messages were "automatically deleted," she relied on her memory to fill in the spreadsheet for pay periods 12, 13, and part

4

covered by 1.5 hours of her FMLA leave, but she was charged for 6.5 hours of AWOL. [65] ¶ 39. On March 26 and 29, Sprosty was charged with eight hours of AWOL each day. [65] ¶ 40.

Defendant says Sprosty was marked AWOL because she had no leave remaining, but Sprosty says she had FMLA, sick, and "other" leave available at the end of the applicable pay period. [65-8] at 3; [65-9] at 2–3. Sprosty points to her timesheets, which state a balance of 475.75 hours of FMLA leave for the pay period March 14 to March 27. [65-11] at 3.

The Lovell Health Care Center payroll supervisor Paul Trice explained that FMLA balances on timesheets tracked usage starting from zero hours up to the maximum of 480 hours. [69-1] at 9 (33:5–12); [69-2] ¶ 3. What this means, according to Trice, is that when FMLA leave was used, the balance would go up, not down. [69-1] at 9 (33:13–18); [69-2] ¶ 3. If someone had run out of FMLA leave, the balance on the timesheet would read 480. [69-1] at 9 (33:22–24). Trice stated that the same increasing-usage calculation was used for leave without pay and absent without leave balances. [69-2] ¶ 4. This explanation is the opposite of the VA's timesheet entry explanation document, which stated that "balance" on a timesheet means "the amount of available leave as of the end of the pay period you are now viewing." [69] ¶¶ 18–19.

---

of 14. [52-3] at 12. Defendant concedes that Eden-Fulop could not identify any other employee tracked in this manner. [69] ¶¶ 3, 6. Finally, defendant has not attached an affidavit by Eden-Fulop or any other person qualified to introduce this evidence at trial that this was a record of a regularly conducted business activity. Because the spreadsheet is inadmissible hearsay not subject to any exception, I do not consider it for the truth of the matters asserted.

5

On April 13, Sprosty submitted a request for emergency paid leave, a benefit offered through the American Rescue Plan Act of 2021, that allowed eligible full-time employees up to 600 hours of paid leave. [65] ¶ 41. Emergency paid leave could be granted for reasons related to COVID-19, including childcare issues. [65] ¶ 43. Sprosty's emergency paid leave agreement was one for intermittent leave during the pay periods from April 21 to June 9, 2021. [65] ¶ 42; [52-3] at 15. She was allowed to take emergency paid leave on Wednesday, Thursday, and Friday of the first week of each pay period, and Thursday and Friday of the second week of the pay period. [65] ¶ 42.[5]

On April 27, Sprosty was charged with four hours of AWOL. [45] ¶ 45.[6] Sprosty was charged eight hours of AWOL for absences on May 3 and 4, and June 15 and 16. [45] ¶¶ 46–47.[7] Sprosty argues she applied for a new emergency paid leave term that was approved up to and including June 18. [65-10] at 14. The approval notes that the estimated time to be used was eight hours. [65-10] at 14.

---

[5] Sprosty disputes this to the extent that it suggests it was her only emergency paid leave request, but her dispute does not contradict the asserted fact.

[6] Sprosty argues that this leave should have been covered by emergency paid leave because her absence was covered by emergency paid leave on April 26, 28, 29, and 30. [65] ¶ 45. The absences on April 28, 29, and 30 (Wednesday, Thursday, and Friday of the first week of the pay period) would be covered by her agreement. The absence on April 26, a Monday, was not covered by the agreement but still approved for emergency paid leave. [65-11] at 6. It is not clear why she was not approved on April 27 as well, but her agreement did not guarantee her leave on that day. [65] ¶ 42.

[7] Again, Sprosty argues that this leave should have been covered by emergency paid leave because she had been approved for that leave before and after these two days, but her agreement did not guarantee her leave on these days. [65-11] at 6; [65] ¶ 42.

6

On July 15, Sprosty was charged 1.5 hours of AWOL. [65] ¶ 48. On July 21, Sprosty was issued a return-to-duty letter by her supervisor, which said that Sprosty had been charged with 232 hours of AWOL. [65] ¶ 49. Sprosty's timesheet showed a negative balance of -160.5 hours of AWOL. [65-11] at 14.

After she returned to work, Sprosty submitted requests for additional emergency paid leave. [65] ¶ 51. Both requests were denied, according to the VA, because Sprosty was in AWOL status. [65] ¶ 51. After Sprosty submitted congressional inquiries related to the VA's denial of her requests, the VA reexamined her timesheets for inaccuracies. [65] ¶ 52. The VA found errors, that Sprosty was in fact eligible for emergency paid leave, and retroactively corrected Sprosty's timesheets. [65] ¶ 56. The correction period took place between September and December 2021. [65] ¶ 56. The corrections included some—but not all—of Sprosty's AWOL charges between June 17, 2021, and August 26, 2021, to properly reflect the emergency paid leave Sprosty was entitled to. [65] ¶ 57.[8]

On July 27, 28, and 29, Sprosty was charged with three hours, eight hours, and eight hours of AWOL. [65] ¶¶ 53–54. The VA says that Sprosty had no sick leave available, but her timesheet shows she had a balance of twenty-three hours of sick leave. [65-11] at 14.

On August 20 and 27, defendant asserts that Sprosty did not report to work and did not call in, but Sprosty testified broadly that she called in when requesting

---

[8] The AWOL charges listed above were not the ones changed during the corrections period.

7

to take leave. [52-2] at 17 (59:12–24, 61:10–17). Sprosty was charged with sixteen hours of AWOL. [65] ¶ 58.

Sprosty was absent from work for the entire duration of pay period eighteen, August 29 through September 9, and charged seventy-two hours of AWOL. [65] ¶ 59. Sprosty disputes that she was properly charged with AWOL, as her timesheet shows she had 8.75 hours of annual leave available, and 479.25 hours in the FMLA row. [65] ¶ 59; [65-11] at 17. On September 9, Eden-Fulop told Sprosty that she did not have any approved emergency paid leave and would be marked AWOL. [65] ¶ 60. Sprosty again argues that she had available leave to use. [65] ¶ 60; [65-11] at 17.

Trice reviewed Sprosty's timesheets and found that when Sprosty returned to work on September 10, 2021, she had used 625.75 hours of emergency paid leave, exhausted all of her accrued annual and sick leave, and exhausted 479.25 hours of FMLA leave for the period starting November 26, 2020, and ending November 25, 2021. [52-3] at 106–07 (¶¶ 6–9).

Sprosty was absent from work for the entire duration of pay periods 20, 21, 22, and for part of pay period 23 (September 28 through November 16), and was charged 71.5 hours of AWOL (pay period 20), eighty hours AWOL (pay period 21), eighty hours AWOL (pay period 22), and fifty-six hours AWOL (pay period 23). [65] ¶¶ 62–65. She was charged with another sixteen hours of AWOL on November 22 and 23. [65] ¶ 66. Sprosty again disputes that she was properly charged with AWOL, as her timesheets show positive balances. [65] ¶¶ 62–66; [65-11] at 19–21, 23, 25–26. Trice said that there are 2087 work hours in a twelve-month period, and that Sprosty had worked

8

for only 457 hours between November 26, 2020, and November 25, 2021. [52-3] at 107 (¶ 11).[9]

On January 3, 2022, the VA issued a charge letter outlining Sprosty's alleged unauthorized absences with 457 hours of AWOL charges on various dates beginning March 25, 2021, and ending November 23, 2021. [65] ¶ 72. The author of the letter used an "evidence file," including Eden-Fulop's spreadsheet (*see* n.4 above), in writing the charge letter. [52-3] at 68 (15:17–22); *see also* [69-4].

Sprosty met with Dr. Robert Buckley, the Lovell director, on January 19, 2022, to respond to the charge letter outlining the alleged unauthorized absences. [65] ¶ 73. Sprosty responded to the first three charges by saying she had not previously had attendance issues before being "realigned" and that before that, she was able to use her leave to include leave without pay when needed. [52-3] at 115 (¶ 3). She responded to charges four through twenty by challenging the accuracy of the charges, saying she should have been on approved COVID (emergency paid) leave. [52-3] at 115 (¶¶ 4–5). She further responded to specifications fifteen through twenty by saying that she had acquired leave to use but was not allowed to use it. [52-3] at 115 (¶ 5). Sprosty told Buckley that she believed the proposed removal was more about her supervisor's dislike for her than her attendance issues. [52-3] at 116 (¶ 10).

---

[9] Sprosty disputes that there are 2087 hours in a twelve-month federal employment period, and states that there are 2080 hours. [65] ¶ 67. Sprosty also disputes the materiality of the number of hours worked, given that she had approved leave, "meaning Defendant cannot then AWOL her," and had substantial available leave balances to cover any absences during this period. [65] ¶ 67.

9

Buckley issued a termination letter on January 24, removing Sprosty from federal service effective February 7, 2022. [65] ¶ 74. He noted that there was a significant amount of unauthorized leave in Sprosty's record. [65] ¶ 74. Sprosty argues that these charges were inaccurate, illegitimate, and invalid, and says the corrections made from September to December show that the removal decision was premised on "fundamentally inaccurate information." [65] ¶ 74.

Sprosty filed her first Equal Employment Opportunity complaint alleging discrimination, improper denial of accommodation, and retaliatory AWOL charges on September 9, 2020. [65] ¶ 75; [69] ¶ 2; [52-3] at 119–20. Sprosty's supervisors were aware of this complaint, and Buckley was notified on March 5, 2021, that Sprosty had submitted a request to the Equal Employment Opportunity Commission for a hearing before an administrative judge. [65] ¶ 79; [69] ¶ 1. Twenty days later, Eden-Fulop began tracking plaintiff's leave usage. [69] ¶ 3. Sprosty withdrew her EEOC hearing request on December 15. [69] ¶ 24. The VA issued a final agency decision on April 14, 2022, finding no discrimination. [65] ¶ 76.[10]

Five days later, Sprosty filed a second formal EEO complaint again alleging denial of reasonable accommodation, harassment, retaliation, and improper denials of leave and interference with attempts to correct denials, culminating in Sprosty's removal. [65] ¶ 77; [52-3] at 136–39. On February 23, 2023, the VA issued a final agency determination, finding no discrimination. [65] ¶ 78.

---

[10] Sprosty disputes this fact as immaterial because the VA's internal conclusions have no relevance or probative value. I do not consider the VA's conclusions but simply note the fact as relevant procedural history.

**III.    Analysis**

   **A.    FMLA Interference**

The Family and Medical Leave Act guarantees eligible employees up to twelve workweeks of leave when the employee has a serious health condition that renders her unable to perform her position. 29 U.S.C. § 2612(a). Employers are prohibited from interfering with, restraining, or denying the exercise of an employee's use of leave under the Act. 29 U.S.C. § 2615(a)(1).[11] Sprosty alleges that the VA interfered with her rights provided under the Act by terminating her for absences approved under the FMLA. [21] ¶ 68.

Sprosty must prove five elements to support a claim of FMLA interference: (1) she is eligible for protection under the Act; (2) the Act covers the VA; (3) she was entitled to leave under the Act; (4) she notified the VA of her intent to take leave; and (5) the VA denied her benefits to which she was entitled under the Act. *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 658 (7th Cir. 2024). The VA focuses on the last element, but its arguments also address the notice element.

Sprosty argues that the timesheets show that she continued to hold a balance of 479.25 hours of FMLA leave, meaning that she had that many hours available to take. She has a document showing that "balance" means "[t]he amount of available leave as of the end of the pay period you are now viewing." [65-13] at 2. Trice, the payroll supervisor, says that on the timesheets, FMLA leave is tracked as it is used—

---

[11] In her response to the motion for summary judgment, Sprosty withdrew Counts I, II, and III of her complaint, leaving only the FMLA interference and FMLA and Rehabilitation Act retaliation claims. [64] at 2, n.1.

11

that the balance of the leave goes up on the timesheet as it is used, not down. The timesheet itself shows that Sprosty had a "forward" FMLA balance of 428:45 for the pay period of March 15 through March 26, 2021. It says she used forty-seven hours of FMLA leave that period. [65-11] at 3. The balance column reads 475:45—the sum total of the "forward" plus the "used" columns. [65-11] at 3. The next pay period, the "forward" FMLA balance says 475:45, Sprosty used 3:30 hours of FMLA leave, and the FMLA balance column reads 479:15—again, the sum of 475:45 and 3:30. [65-11] at 5. This increase corroborates Trice's testimony and affidavit. No reasonable juror could believe that the balance was not increasing as Sprosty used her FMLA leave. There is no genuine dispute that Sprosty's use of FMLA leave increased to 479.25 of her 480 guaranteed hours by the end of pay period 7 on April 10, 2021. [65-11] at 4. If Sprosty did call in and request FMLA leave after that point, she was entitled to just forty-five minutes of leave.

If Sprosty had forty-five minutes remaining, and if she called in to request FMLA leave, she did not have enough FMLA leave to cover the remaining 451.5 hours of AWOL hours she took after the end of the April 10 pay period. *See* [65-11] at 6–27. An employer that would have terminated an employee whether or not she took FMLA leave is not guilty of FMLA interference. *See Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1304 (7th Cir. 2022). If the VA can "present evidence that [Sprosty] would have been terminated regardless of her leave, she can survive summary judgment only by raising a genuine issue of material fact that, despite the evidence, she was entitled to" keep her job. *Id.* Sprosty was not fired immediately after she took leave

12

for more than forty-five minutes. Rather, she was terminated after she was charged with another 450.75 hours of AWOL over the next five months. Sprosty has raised no genuine issue that she was entitled to keep her job after accumulating so many hours of AWOL charges. *See, e.g., Breneisen v. Motorola, Inc.*, 512 F.3d 972, 982 (7th Cir. 2008) (affirming summary judgment on FMLA claims where employee had four hours of unexcused absence). The VA did not deny Sprosty leave to which she was entitled.

Even if Sprosty were right that she had 479.25 hours remaining, she was required to invoke her FMLA leave when calling in. [65] ¶¶ 34, 37; 29 C.F.R. § 825.302 ("An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. … When an employee seeks leave due to a FMLA-qualifying reason, for which the employer has previously provided FMLA-protected leave, the employee must specifically reference the qualifying reason for leave or the need for FMLA leave."). If an employee does not abide by an employer's "usual and customary notice and procedural requirements" for requesting leave, "and her failure is not justified by any unusual circumstances, approval of FMLA leave may be delayed or denied." *Davis v. Ill. Dep't of Hum. Servs.*, 137 F.4th 641, 645 (7th Cir. 2025).

Although Sprosty testified that she would call in *if* she was using FMLA leave and tell her supervisor that she was taking leave, she has produced no evidence that for the twenty days she was charged with AWOL, she did in fact request FMLA leave that day. *See* [65] ¶¶ 48, 53–54 (Sprosty arguing she had leave to cover her absence,

13

but does not say she invoked FMLA); ¶¶ 39–40, 58–59, 62–66 (Sprosty arguing she had enough leave balances and that she "consistently invoked FMLA," but did not say she invoked the FMLA on the specific date, and her record citations do not support such an inference). Indeed, she concedes that some of the AWOL charges were not related to FMLA leave. *See* [65] ¶¶ 45–47 (Sprosty arguing that the absences were emergency paid leave-related). In short, even if Sprosty did have 479.25 hours of FMLA left, she has not produced any evidence that would allow a juror to conclude that on the specific dates she was marked AWOL, she invoked her FMLA benefits in accordance with VA policy. Because she has not shown that she complied with the VA's "usual and customary" notice requirements, she cannot show that the VA wrongfully denied her FMLA leave. *Davis*, 137 F.4th at 644–45.

Because Sprosty cannot show that the VA denied her FMLA leave that she was entitled to or terminated her for using FMLA leave, summary judgment is granted as to her FMLA interference claim.

### B. Retaliation

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individuals for opposing any practice made unlawful by" the Act. 29 U.S.C. § 2615(a)(2). Similarly, the Rehabilitation Act makes it unlawful for a person to "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination … under any program or activity conducted by any Executive Agency" solely because of her disability. 29 U.S.C. § 794(a). Retaliation claims under the FMLA and the Rehabilitation Act are analyzed under the same framework as other federal labor and employment laws. *Ziccarelli v.*

14

*Dart*, 35 F.4th 1079, 1091 (7th Cir. 2022); *Vargas v. DeJoy*, 980 F.3d 1184, 1188 n.4 (7th Cir. 2020). Sprosty must show that (1) she engaged in a statutorily protected activity; (2) the VA took adverse action against her; and (3) the protected activity caused the adverse action. *Brooks v. City of Pekin*, 95 F.4th 533, 539 (7th Cir. 2024). Sprosty must establish "but for" causation between the protected activity and her termination. *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022).

Circumstantial evidence of causation includes "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* at 937 (quoting *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 802 (7th Cir. 2018)).

If Sprosty can establish a prima facie case of retaliation, the City must offer a "legitimate, nondiscriminatory reason for its adverse action." *Brooks*, 95 F.4th at 539 (quotation omitted). The burden then shifts back to Sprosty to show that the VA's reason was pretextual. *Id.*

There is no dispute that Sprosty engaged in statutorily protected activities. She filed two claims with the EEOC; requested and received reasonable accommodations in 2017, 2020, and 2021; sought and received FMLA leave in 2020 and 2021; and requested an EEOC hearing on March 5, 2021. [64] at 9. Sprosty's

15

supervisors were aware of her EEO activity. Buckley, who decided to terminate Sprosty, knew of her request for an EEO hearing as early as the day it was requested.

There is also no dispute that the VA took adverse action against Sprosty—she was terminated on January 24, 2022, effective February 7.

The only question is whether any protected activity caused her firing. Sprosty argues that there is evidence showing that the VA's stated reasons for terminating her were false. She said that the VA rarely, if ever applied FMLA to the twenty absences it used as justification to fire her, even though she had a remaining balance of 479.25 hours. [64] at 9–10. She points out the contradictions between the testimony of Trice regarding how FMLA hours appeared on timesheets and the Agency's document regarding their timekeeping system.

She also argues that there is evidence that Eden-Fulop fabricated the spreadsheet used as a basis for finding Sprosty AWOL. Sprosty argues that there is evidence of suspicious timing in that the VA proposed her removal nineteen days after she withdrew her EEOC hearing request. Finally, she says that Buckley was aware of her protected activity, learned that Sprosty had FMLA leave remaining, and sustained her proposed removal anyway.

While requesting an EEOC hearing, requesting accommodations, and seeking FMLA leave are all protected activities, it is not clear how withdrawing a hearing request is a statutorily protected activity. Withdrawing a request for a hearing is not an act in opposition to perceived discrimination. In any event, "[s]uspicious timing

16

alone rarely establishes causation." *Parker*, 39 F.4th at 937. Suspicious timing combined with evidence of pretext may, however, support causation. *Id.*

The rest of Sprosty's support is evidence of pretext. When evaluating her evidence, the only question "is whether the employer's proffered reason was … a lie." *Parker*, 39 F.4th at 937–38. At the summary judgment stage, the plaintiff "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's asserted reasons that a reasonable person could find it unworthy of credence." *Id.* at 938 (citations omitted). The problem with Sprosty's arguments about pretext is that she has identified no specific evidence to contradict that she was absent on the days in question or show that she was entitled to FMLA or emergency paid leave on those specific days.

Trice's testimony may not be consistent with the VA's policy document regarding its timekeeping tables, but it was consistent with Sprosty's own timesheets, which show that the VA did apply her FMLA leave, and when it did, her balance increased. This inconsistency does not provide evidence that the VA terminated Sprosty for requesting and using accommodations, filing claims and requesting a hearing with the EEOC, or using her FMLA leave on those days. Indeed, in her oral reply to the charge letter, Sprosty argued she had enough emergency paid leave to cover her absences. [52-3] at 115. There is no evidence that she referred to her FMLA leave at that time.

17

There is also no evidence that Buckley knew that Sprosty had enough FMLA leave left to cover all of the alleged AWOLs, or that if she did, that he knew she had invoked her FMLA leave.

If Eden-Fulop lied in her spreadsheet, Sprosty could potentially show that the VA's asserted reasons for her termination were unworthy of credence. *Parker*, 39 F.4th at 938. But Eden-Fulop was not the person to terminate Sprosty's employment. Instead, the VA issued a charge letter proposing her termination, which was reviewed by Buckley, the director of Lovell. Because Eden-Fulop was not the ultimate decisionmaker, Sprosty must show that Buckley "issued an adverse employment action based on the discriminatory animus of another." *Huff v. Buttigieg*, 42 F.4th 638, 650 (7th Cir. 2022). Eden-Fulop's spreadsheet must have been a "proximate cause" of her termination. *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 370 (7th Cir. 2019). To avoid liability, Buckley was "not required to be a paragon of independence. It is enough that the decisionmaker [was] not wholly dependent on a single source of information and conduct[ed his] own investigation into the facts relevant to the decision." *Id.* (citations omitted).

There is no evidence that Buckley based Sprosty's termination on Eden-Fulop's spreadsheet alone. Indeed, Sprosty was given the opportunity to respond to each charge orally, which she did. In the memorandum documenting her responses, Sprosty mostly argued that the charges should be covered with her emergency paid leave. [52-3] at 115 (¶¶ 4–5). She also argued that before she had been moved around clinics, she had no previous attendance issues and that "prior to being realigned she

18

was able to utilize her leave to include leave without pay when needed. She was confused of the reasoning for the inability to take leave without pay and why she was being placed in an unauthorized leave status." [52-3] at 115 (¶ 3). There is no mention of FMLA leave in the memorandum.

That Buckley heard evidence directly from Sprosty herself shows he "conducted his own investigation into the facts relevant to the decision." *McDaniel*, 940 F.3d at 670. In the final removal letter, Buckley wrote that "in reaching this decision, all evidence developed was carefully considered including your oral reply and submitted documents." [52-3] at 22. Sprosty has not provided any evidence that Buckley failed to consider her oral reply or submissions. Because the record shows that Buckley was not wholly dependent on Eden-Fulop's spreadsheet, Sprosty cannot show that Eden-Fulop's discriminatory animus was a proximate cause of her termination. Eden-Fulop's fabricated spreadsheet does not allow a jury to find that Buckley's ultimate reasons for Sprosty's termination were unworthy of credence.

Finally, there were at least seven workdays that Sprosty claims she was eligible for emergency paid leave—not FMLA leave—for which she was marked AWOL. During Sprosty's oral reply, Buckley noted that "even with some type of margin of error with COVID [emergency paid] leave there is significant unapproved leave in her record," and Sprosty responded that her leave was still being fixed and that once it was, the amount of acquired leave could be used to cover "most" of the unauthorized leave days. [52-3] at 115 (¶¶ 11–12). But Sprosty's agreement for emergency paid leave was intermittent, and did not cover the days that she was

19

marked AWOL. *See supra* n.6 and n.7. The VA had "ample legitimate, nondiscriminatory reasons for" terminating Sprosty. *Brooks*, 49 F.4th at 539.

Because Sprosty has not shown a dispute of genuine fact that could allow a jury to find that the VA retaliated against her for a protected activity, the defendant is entitled to judgment as a matter of law.

### IV. Conclusion

Defendant's motion for summary judgment, [51], is granted. Enter judgment and terminate civil case.

ENTER:

                                                             /s/ Manish S. Shah
                                                             Manish S. Shah
                                                             United States District Judge

Date: July 24, 2025